
IN THE UNITED STATES DISTRICT COURT
<u>FOR THE NORTHERN DISTRICT OF NEW YORK</u>

MIDDLE EAST CRISIS RESPONSE (MECR),
et al.,

                        Plaintiffs,

   v.                                                1:08-CV-0690 (LEK/RFT)

CITY of KINGSTON,
SGT. JAMES MAISENHELDER,
OFFICER WILLIAM HADSEL,
OFFICER SCOTT WILLIAMS, and
OFFICER HARRY WOLTMAN,

                        Defendants.
_____

**<u>MEMORANDUM-DECISION AND ORDER</u>**

**I.     INTRODUCTION**

Plaintiffs, as members of the Middle East Crisis Response ("Plaintiffs" or "MECR"), an unincorporated organization, commenced this action on June 30, 2008 for damages pursuant to 42 U.S.C. § 1983.  They allege, *inter alia*, that Defendants, the City of Kingston ("Defendant City") and four police officers ("Defendant officers") employed by the Defendant City, violated their First Amendment rights by preventing Plaintiffs from entering or demonstrating at a municipal park, and from carrying political signs and distributing leaflets on the public sidewalk near that park, as well as by maintaining and enforcing discretionary and over-broad permit regulations for the use of public parks in the City of Kingston.  Am. Compl. (Dkt. No. 27).  Plaintiffs also allege that

Defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment by preventing Plaintiffs from entering or demonstrating at the park. Id. Presently before the Court is Plaintiffs' renewed Motion for summary judgment. Mot. (Dkt. No. 36). For the reasons discussed below, the Motion is denied.

**II.     BACKGROUND**

Plaintiffs are members of MECR, a group comprised of individuals from the Hudson Valley region of New York State who seek to protest various policies of the State of Israel and the United States in the Middle East. Am. Compl. ¶ 2 (Dkt. No. 27); Pls.' Mem. in Supp. at 1 (Dkt. No. 36). MECR members engage in public protests, leafleting, and advocacy to advance their political views. Am. Compl. ¶ 3 (Dkt. No. 27); Pls.' Mem. in Supp. at 1 (Dkt. No. 36). Defendants are the City of Kingston, Sergeant James Maisenhelder, and Officers William Hadsel, Scott Williams, and Harry Woltman. Am. Compl. ¶ 6–8 (Dkt. No. 27). The individual Defendants are sued in their individual capacities. Am. Compl. ¶ 8 (Dkt. No. 27).

On May 4, 2008, the Ulster County Jewish Federation ("UCJF") was celebrating the sixtieth anniversary of the founding of the State of Israel at the T.R. Gallo Waterfront Park ("the park"). Am. Compl. ¶ 12 (Dkt. No. 27); Pls.' Mem. in Supp. at 1 (Dkt. No. 36). The event was open to the public and cosponsored by the City of Kingston. Id. On that date, Plaintiffs gathered outside the park to leaflet, display signs, and protest against Israel and the United States or the policies thereof. Am. Compl. ¶ 11 (Dkt. No. 27); Pls.' Mem. in Supp. at 1 (Dkt. No. 36). The park is a public area bordered by West Strand Avenue, a public roadway. Am. Compl. ¶ 12 (Dkt. No. 27).

Plaintiffs allege that they entered the park from West Strand Avenue once the celebration

was underway. Pls.' Mem. in Supp. at 1–2 (Dkt. No. 36). After about fifteen minutes had passed, they contend that several UCJF celebrants approached Defendant Officer Woltman to complain about the Plaintiffs' unwelcome entry into the park, which the UCJF had reserved for the day; it is asserted that, subsequently, approximately one dozen UCJF celebration participants engaged in "heated" discussions with Plaintiffs. Pls.' Mem. in Supp. at 2 (Dkt. No. 36). Defendant Officer Woltman then contacted Defendant Sergeant Maisenhelder to apprise him of the situation. Pls.' Mem. in Supp. at 2 (Dkt. No. 36); Woltman Dep. at 20–21 (Dkt. No. 38-2). According to Defendant Officer Woltman, the crowd was "agitated enough and they were dug in their positions enough that the verbal exchanges were definitely heated." Woltman Dep. at 26–27 (Dkt. No. 38-2). When Defendant Sergeant Maisenhelder arrived, four or five protestors and several celebrators were "yelling back and forth." Maisenhelder Dep. at 16–17 (Dkt. No. 38-3). They are reported to have been located approximately one foot apart and moving towards each other. Id.

At this point, Defendant Sergeant Maisenhelder decided to have Plaintiffs exit the park for the stated reason of preserving public safety and order. Maisenhelder Dep. at 29–30; 39–40 (Dkt. No. 38-3). Defendant officers moved Plaintiffs away and informed them that UCJF had a permit to use the park that day. However, it is alleged by MECR that while UCJF indeed had permission to use the park, they did not have an actual permit. Am. Compl. ¶ 13 (Dkt. No. 27); Pls.' Mem. in Supp. at 4 (Dkt. No. 36). Defendant Sergeant Maisenhelder also prevented Plaintiffs from carrying their signs or leafleting on the public sidewalk along West Strand Avenue; rather, he escorted Plaintiffs to a "designated protest area" outside of the park. Am. Compl. ¶ 14–15 (Dkt. No. 27); Pls.' Mem. in Supp. at 4 (Dkt. No. 36). Plaintiffs contend that the "designated protest area"

obstructed their view of the UCJF event and inhibited them from conveying their message to the celebrants. Pls.' Mem. in Supp. at 5 (Dkt. No. 36); Am. Compl. ¶ 18–19 (Dkt. No. 27). While several of the Plaintiffs were permitted to reenter the park on their own, the group as a whole was prohibited from demonstrating or assembling inside the park. Am. Compl. ¶ 21 (Dkt. No. 27). When Defendant officers realized that a number of the Plaintiffs had returned to the park and were leafleting, the MECR members were again ordered to leave. Am. Compl. ¶ 22 (Dkt. No. 27); Pls.' Mem. in Supp. at 6 (Dkt. No. 36).

Plaintiffs allege that the City maintains a policy of segregating public assemblies by determining whether persons with contrary political views will cause a disturbance. Am. Compl. ¶ 24 (Dkt. No. 27). Plaintiffs further contend that the City does not maintain any guidelines governing the location of designated protest areas, and, therefore, that the rules governing such matters are vague and discretionary. Am. Compl. ¶ 27–28 (Dkt. No. 27). Plaintiffs also find fault with the City Parks and Recreation Department's permit application form, which is used to reserve other public parks in the City, but is not used for the park in question. Am. Compl. ¶ 30 (Dkt. No. 27). Plaintiffs admit that the City maintains no written procedures for use of the park involved in this case. Pls.' Stat. of Facts ¶ 28 (Dkt. No. 11).

In response to Plaintiffs' Complaint, Defendants deny the allegations of constitutional violations and raise eight affirmative defenses: that Defendants acted in good faith and without malice; that Defendants are entitled to qualified immunity; that Plaintiffs' claims fail to state facts sufficient to constitute a valid cause of action; that the alleged damages sustained by Plaintiffs were caused solely by the conduct of Plaintiffs or were contributed to by the conduct of Plaintiffs; that

Defendants provided a reasonable alternative for Plaintiffs to exercise their constitutional rights; that any restriction placed upon Plaintiffs' right to assemble and protest were reasonable; that Defendants acted reasonably to preserve public order and safety; and that Defendants properly advised Plaintiffs to relocate.  Answer to Am. Compl. (Dkt. No. 28).

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing the judgment.'"  Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted).  Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  Brown, 257 F.3d at 251 (citation omitted).  The nonmoving party "may not rely merely on allegations or denials in its own

5

pleadings," as bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

**IV.   DISCUSSION**

**A. Reasonable Restrictions on the Time, Place, or Manner of Protected Speech**

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981) (citing Adderley v. Florida, 385 U.S. 39, 47–48 (1966)). Consistent with this principle, protected speech undertaken in locations deemed to be public forums may encounter certain state-imposed limitations which do not fun afoul of First Amendment protections. Specifically,

> even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are [1] justified without reference to the content of the regulated speech, that they are [2] narrowly tailored to serve a significant governmental interest, and that [3] they leave open ample alternative channels for communication of the information."

Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984)). Only if the restrictions imposed upon Plaintiffs' activities fail to meet these criteria will a cognizable free speech violation be found.

**1. Content Neutrality**

Restrictions upon the time, place, or manner of protected speech must be content neutral and, therefore, "'may not be based upon either the content or subject matter of speech.'" Heffron,

6

452 U.S. at 648 (quoting Consol. Edison Co. v. Pub. Serv. Comm'n, 447 U.S. 530, 536 (1980)). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward, 491 U.S. at 791 (citing Clark, 468 U.S. at 295). Under such an inquiry, the "government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ward, 491 U.S. at 791 (citing Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47–48 (1986)).

Plaintiffs argue that Defendant officers excluded Plaintiffs from the park because of the content of their speech. Pls.' Mem. in Supp. at 16 (Dkt. No. 36). However, the facts alleged show that Defendant officers did not interfere with Plaintiffs' initial entrance into and use of the park, having relocated the Plaintiffs only after Plaintiffs and several celebrators began yelling at one another and moving towards each other. Defs.' Aff. in Opp. ¶ 9 (Dkt. No. 38). Indeed, according to Defendant officers, Plaintiffs had already set up banners and handed out flyers up before the celebrants approached Plaintiffs. Id. Only at the moment of confrontation were the police contacted, and only then did they intervene. Id. Further, one of the Plaintiffs concedes that the police "did not interfere with their ability to protest until there was some type of confrontation with people celebrating the event." Id. Prior to the confrontation, Defendant officers were not aware of the existence of MECR, nor were they aware that its members intended to protest at the park that day. Defs.' Mem. at 6 (Dkt. No. 38-9). Resolving ambiguities in favor of the nonmoving party, it is apparent that a reasonable jury could return a verdict for the nonmovant Defendants. There exist

issues of material fact as to whether the actions of Defendant officers were motivated by the content of Plaintiffs' speech, as Plaintiffs argue, or whether the measures were taken in furtherance of public safety.

### 2. Significant Governmental Interest

In addition to being content neutral, "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but . . . it need not be the least restrictive or least intrusive means of doing so." Ward, 491 U.S. at 798. The "requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Id. at 799 (quoting United States v. Albertini, 472 U.S. 675, 689 (1985)); see also Clark, 468 U.S. 288, 297 (1984). Of relevance to the existence of a significant government interest in the present case, "it is clear that a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective." Heffron, 452 U.S. 640, 648 (1981) (citing Grayned v. City of Rockford, 408 U.S. 104, 115 (1972); Cox v. New Hampshire, 312 U.S. 569, 574 (1941)). "The State also has a strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks, and in protecting the property rights of all its citizens." Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 768 (1994). While the "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals," Ward, 491 U.S. at 799, the restrictive means a government employs "are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.'" Id. at 797 (quoting Albertini, 472 U.S. at 689).

Plaintiffs are not challenging a municipal ordinance or regulation.  Rather they are challenging the directives issued by Defendant Sergeant Maisenhelder at the site of the protest.  Defendant Sergeant Maisenhelder testified that he escorted Plaintiffs out of the park in the interest of public safety after he observed Plaintiffs and several celebrators arguing and moving towards each other.  Pls.' Mem. in Supp. at 11 (Dkt. No. 36).  The City's "interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective," Heffron, 452 U.S. at 648; however, Defendant Officer Maisenhelder's directive must have been narrowly tailored to meet this objective.  Plaintiffs contend that the actions of the Defendant officers were not narrowly tailored because they were motivated by Defendant officers' "speculative fear about the possibility of violence."  Pls.' Mem. in Supp. at 11 (Dkt. No. 36).  Plaintiffs further argue that being removed from the park, and being prevented from leafleting and holding signs on the sidewalk across from the park, do not constitute means narrowly tailored to meet the public safety objective, and that Defendant Sergeant Maisenhelder's directive burdened more speech than was necessary to preserve public order.  Pls.' Mem. in Supp. at 19 (Dkt. No. 36).  Defendants counter that Defendant officers did not prohibit Plaintiffs from protesting; rather, they moved them away from the celebration site and the celebrants with whom they had been arguing.  Defs.' Aff. in Opp. ¶ 8 (Dkt. No. 38).  Defendant Officer Woltman also observed that even after Plaintiffs had been relocated, celebrators leaving the event continued to approach Plaintiffs and to engage in heated conversations.  Defs.' Aff. in Opp. ¶ 10 (Dkt. No. 38).  For this reason, Defendant Officer Woltman believed that it continued to be necessary to separate the two groups to maintain public safety.  Defs.' Aff. in Opp. ¶ 10 (Dkt. No. 38).

Plaintiffs also argue that Defendant Sergeant Maisenhelder had a number of alternative means that would have furthered the same interest in public safety, while placing a smaller burden on Plaintiffs' protected speech. Pls.' Mem. in Supp. at 21 (Dkt. No. 36). Plaintiffs suggest that they could have been permitted to protest at the site where they entered the Park. Pls.' Mem. in Supp. at 21 (Dkt. No. 36). Yet this was the scene of the confrontation that prompted the relocation, and the site that Plaintiffs had chosen for their protest, not an "alternative." Plaintiffs also suggest that the creation of a buffer zone to separate Plaintiffs from the celebrants within the park would have been a feasible option. Id. Plaintiffs likewise suggest that they could have been relocated to the sidewalk across the street from the park along West Strand Avenue. Id. It is unclear why the Defendant officers did not relocate them to these locations, or whether the alternate locations suggested by Plaintiffs would place a lesser burden on the Plaintiffs' protected speech. This ambiguity demonstrates an issue of fact as to whether the conduct of Defendant officers was warranted in order to further the City's interest in public safety and order, and whether their actions were narrowly tailored to further this interest. Given these open factual questions, summary judgment is inappropriate.

### 3. Ample Alternative Channels for Communication of Information

"The First Amendment protects the right of every citizen to 'reach the minds of willing listeners and to do so there must be opportunity to win their attention.'" Heffron, 452 U.S. 640, 655 (1981) (quoting Kovacs v. Cooper, 336 U.S. 77, 87 (1949)). For this reason, "to be valid as a place and manner restriction, it must also be sufficiently clear that alternative forums for the expression of respondents' protected speech exist despite the effects of the [restriction]." Heffron, 452 U.S. at

654. A restriction may conform to this criteria if "it does not attempt to ban any particular manner or type of expression at a given place or time." Ward, 491 U.S. at 802.

Here, Defendant officers did not ban the protected speech activities of Plaintiffs, rather they placed a restriction on the location of these activities. Thus, the issue is whether the designated area where the Defendant officers relocated Plaintiffs was an ample alterative channel for communication of Plaintiffs' message. Plaintiffs contend that they were relocated behind a large building which made it impossible to effectively communicate their message to the celebrants as a whole. Pls.' Mem. in Supp. at 23 (Dkt. No. 36). While Plaintiffs could not reach every member of the celebration because most of the celebrants were more than one hundred feet away, Plaintiffs concede that they were not entirely cut off from the celebrants, as some celebrants passed by the designated area as they entered and exited the park. Id. at 22. Hence, Plaintiffs were only able to leaflet to a much smaller audience: those celebrants who entered and left the park near the designated protest location. Id. at 23. Contrary to Plaintiffs' view of the setting, Defendant Sergeant Maisenhelder states that the alternate area allowed Plaintiffs to have "high visibility with traffic" and that "the area [he] chose would be high visibility for them and they could get their point across . . . [and] it would be out of the immediate area of the celebration to avoid any further confrontations." Maisenhelder Dep. at 42, 49 (Dkt. No. 38-3).

Plaintiffs further contend that the location was not an ample alternative because their protest was pointless when removed from the context of the celebration. Pls.' Mem. in Supp. at 23 (Dkt. No. 36). Plaintiffs, however, were not protesting the celebration itself, rather they were protesting and advocating political issues in connection with the State of Israel that may or may not have been

11

directly implicated by the celebration. The location, therefore, may not have been an essential part of the message Plaintiffs were attempting to convey. These uncertainties evince issues of material fact which preclude summary judgment as to whether the alternate location was an ample alternative channel for Plaintiffs to communicate their message.

### B. Facial Challenge to Regulations

Plaintiffs also raise a facial challenge to the regulations employed by the City of Kingston. While "facial challenges are generally disfavored, they are more readily accepted in the First Amendment context . . . 'based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court.'" Beal v. Stern, 184 F.3d 117, 125–26 (2d Cir. 1999) (quoting Forsyth County v. Nationalist Movement, 505 U.S. 123, 129 (1992)). Under this "extraordinary doctrine," there is a "narrow class of permissible facial challenges to allegedly unconstrained grants of regulatory authority." Ward, 491 U.S. at 793, 794. Indeed, cases "have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755–56 (1988); see also Ward, 491 U.S. at 793. "Therefore, a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." Lakewood, 486 U.S. at 759.

Plaintiffs raising a facial challenge "confront 'a heavy burden' in advancing their claim. Facial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court sparingly

and only as a last resort.'" Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998) (quoting Rust v. Sullivan, 500 U.S. 173, 183 (1991); Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973); citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 223 (1990)). "To prevail, respondents must demonstrate a substantial risk that application of the provision will lead to the suppression of speech." Finley, 524 U.S. at 580 (citing Broadrick, 413 U.S. at 615).

Plaintiffs assert a facial challenge to the procedures employed by the City to reserve parks other than the park at issue in this case. Specifically, Plaintiffs challenge the "park permit process" which "is only for [the City's] recreational parks for those who wish to reserve a park for a day in order to have a family function and/or event." Defs.' Aff. in Opp. ¶ 6 (Dkt. No. 38). Plaintiffs specifically object to the procedure that requires applicants to apply for a permit seven days in advance and to obtain an insurance policy prior to the event. Pls.' Mem. in Supp. at 26 (Dkt. No. 36). The MECR members intend to engage in public protests, leafleting, and advocacy in the future on public property in the City of Kingston, including municipal parks, sidewalks, and other public places. Pls.' Mem. in Supp. at 1 (Dkt. No. 36). Plaintiffs allege that the seven day notice requirement will infringe upon their First Amendment right to spontaneous protest. Pls.' Mem. in Supp. at 25 (Dkt. No. 36); Defs.' Aff. in Opp. at 21 (Dkt. No. 38). As indicated, however, the seven day requirement applies only to organizations seeking to reserve a City of Kingston park for their own use, including the use of bathrooms, electricity, and eight picnic tables. Defs.' Aff. in Opp. at 21 (Dkt. No. 38). It does not appear to apply to the use of parks in the City of Kingston for spontaneous protest should MECR desire to engage in such activities, and therefore would not place a burden on Plaintiffs' ability to exercise their right to protected speech. Nor does the requirement

pertain to the use of Gallo Park specifically. In response to a Freedom of Information Law request by Plaintiffs, the City Clerk explained that "[t]here is no application for the use of Gallo Park . . . . Groups wishing to use Gallo Park for an event or festival contact the Mayor's or City Clerk's Office." Defs.' Aff. in Opp. ¶ 5 (Dkt. No. 38); Pls.' Mem. in Supp. at 26 (Dkt. No. 36). As to those activities that are covered by the City's regulations, Plaintiffs have failed to demonstrate that the seven day time requirement is unreasonable. Plaintiffs have made no showing that there is a "substantial risk that application of the provision will lead to the suppression of speech," Finley, 524 U.S. at 580, and are therefore not entitled to summary judgment.

Similarly, Plaintiffs object to the insurance policy requirement imposed by the City of Kingston Parks and Recreation Department. Am. Compl. ¶ 30 (Dkt. No. 27); Pls.' Mem. in Supp. at 26 (Dkt. No. 36). However, this requirement only pertains to "large events" that are "advertised in the media and/or open to the public." Pls.' Mem. in Supp. at 26 (Dkt. No. 36). It therefore appears that the insurance requirement is not applicable to individuals who intend to use the parks in the City of Kingston for the exercise of protected speech. Indeed, the UCJF does not appear to have been subject to the insurance requirement for their event. Additionally, even if Plaintiffs wished in the future to host an event that would be subject to such a requirement, Plaintiffs have failed to demonstrate how such an insurance requirement would be unreasonable for the types of events to which the requirement pertains. Hence, this requirement does not give the City "substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." Lakewood, 486 U.S. at 759. Viewing the evidence in the light most favorable to the nonmoving party, Plaintiffs have not demonstrated that the challenged regulations would

interfere with or limit Plaintiffs' constitutional right to freedom of speech. Therefore, summary judgment is not appropriate for Plaintiffs' First Amendment claims.

### C. Equal Protection

"When government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." Carey v. Brown, 447 U.S. 455, 462 (1980) (citing Police Dep't of Chicago v. Mosley, 408 U.S. 92, 98–99 (1972)).  To this end, regulation of protected speech activities must "deal[] evenhandedly with [such activities] regardless of subject matter." Mosley, 408 U.S. at 102. The Equal Protection Clause is thus invoked when First Amendment activities are regulated based upon their content.  Id.

Here, Plaintiffs have not established that they were relocated due to the content of their speech.  Rather, Defendant officers relocated Plaintiffs after the confrontation with the celebrants, and issues of material fact exist as to whether content played any role in the restrictions placed upon Plaintiffs' speech.  Furthermore, Defendant officers did not prohibit Plaintiffs from exercising their First Amendment rights; rather, they placed a restriction upon the location of Plaintiffs' activities. Because Plaintiffs have not demonstrated that Defendant officers discriminated against them based upon the content of their speech, and neither party has provided any further evidence or arguments in support or against the Equal Protection Claim, Plaintiffs' Motion for summary judgment is also denied as to their Equal Protection claim.

### IV. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiffs' renewed Motion for summary judgment (Dkt. No. 36) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:     September 01, 2010
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge